THE CITY OF NEW YORK, Appellant, *v.* THOMAS E. MURRAY, JR., as Receiver of INTERBOROUGH RAPID TRANSIT COMPANY et al., Respondents.

Argued March 10, 1937; decided April 20, 1937.

*Paul Windels, Corporation Counsel (Joseph L. Weiner* and *Herman Horowitz* of counsel), for appellant.

*J. Osgood Nichols* and *Charles Franklin* for respondents. Chapter 431 of the Laws of 1926 specifically requires the city " to provide " for the relocation of and " to place

underground" the power cables. (*Matter of Central Hudson G. & El. Corp.* v. *Morgenthau*, 234 App. Div. 530; 259 N. Y. 569; *Ware* v. *Gay*, 28 Mass. 106; *Manhattan Ry. Co.* v. *Mayor of City of New York*, 89 Hun, 429; *Mayor of City of New York* v. *Manhattan Ry. Co.*, 143 N. Y. 1.)

LEHMAN, J. The Legislature, by chapter 431 of the Laws of 1926, has authorized the city of New York, " acting by its board of estimate and apportionment and with the approval of the transit commission," to acquire by condemnation the right to remove the structure and appurtenances, constituting what is known as the Thirty-fourth Street spur, of the elevated railway line owned by the Manhattan Railway Company and leased to the Interborough Rapid Transit Company. Expressly excluded from the authority to condemn are " rights, easements, franchises, elevated railroad structures, tracks, stations, platforms, stairways and appurtenances * * * which the transit commission may determine necessary for the maintenance and operation of the Second and Third Avenue elevated railroad systems." The statute, in section 2, makes provision for the removal, by the President of the borough of Manhattan, of the structure and appurtenances condemned by the city, but again there is express exception in the statute of the " property, rights, easements and franchises of the Second and Third Avenue Elevated Railroad System as now constructed or modified, pursuant to this act."

The order of the Transit Commission, approving the city's exercise of authority to condemn the elevated railway structure, provides that " this approval shall not be deemed to extend to the condemnation of the right to remove the four stairways at the four corners of Third Avenue and 34th Street, two stairways, one each on the northwest and southeast corners of Second Avenue and 34th Street, the substation located at Nos. 237–241 East 34th Street, and the power cables leading from it

to the Second and Third Avenue elevated structures, which said power cables are to be relocated in subsurface duct lines, and the structures and platforms at Third Avenue and at Second Avenue necessary for the support and service of the respective main line tracks, which are hereby determined necessary for the maintenance and operation of the Second and Third Avenue Elevated Railroad Systems.'' The President of the borough of Manhattan has notified Interborough Rapid Transit Company and Manhattan Railway Company of his intention to demolish the condemned railway structure and that the companies are required to remove the power cables from the structure and to place them in subsurface ducts. The companies refused, claiming that the duty to move and relocate the cables is imposed, under the statute, upon the city. Then the parties submitted the controversy to the Appellate Division upon an agreed statement of facts. That court has determined that the statute places upon the city the duty to remove the cables and to relocate them.

The power cables remain the property of the railway companies after removal and relocation. They are not appropriated by the city because the Transit Commission has determined, pursuant to the terms of the statute, that they are '' necessary for the maintenance and operation '' of the elevated railway system. The Legislature did not overlook the fact that the removal of structures condemned by the city, under authority conferred by the statute, might necessitate alteration in structures not condemned and relocation of power cables necessary for the operation of the railway system. In section 4 of the statute, authorizing the condemnation, the Legislature made provision for the alteration of structures and the relocation of power cables made necessary by the removal of the condemned structures. Any duty which may have been imposed by the Legislature upon the city in connec-

tion with such alteration or relocation must be found in the language of that section.

That section provides that: " The board of estimate and apportionment shall have authority, subject to the approval of the transit commission, to determine whether the condemnation and removal of the elevated railroad structure under authority of this act will render it necessary to strengthen or provide new supports to the elevated railroad structure not condemned, to relocate or modify stairways, approaches, supports and station facilities and to provide for the relocation of and where necessary to place underground the existing power cables for purposes similar to those for which they are now used or the necessary alternative power transmission, and if said board shall determine that the removal of the elevated railroad structure condemned pursuant to the provisions of this act will render it necessary to strengthen or provide new supports; to relocate or modify stairways, approaches, supports and station facilities and to provide for the relocation of and where necessary to place underground existing power cables for purposes similar to those for which they are now used, said board, subject to the approval of the transit commission, shall approve plans therefor and said plans, when approved by said board and by said transit commission shall be authority for the construction and maintenance of the new structures and supports shown thereon; but the approval of such plans shall not be prerequisite to the right to condemn hereby granted nor shall such approval be binding upon the court in determining, for the purposes of estimating the damages, the changes, alterations or improvements to the elevated railroad structures not condemned, made necessary by the removal of the elevated railroad structures condemned."

It is said that under the wording of the section, the city is *required* " to provide " for the relocation of and to " place underground " power cables. The statute authorizes the Board of Estimate and Apportionment, subject

to the approval of the Transit Commission, " to *determine* whether the condemnation and removal of the elevated railroad structure under authority of this act will render it necessary * * * to provide for the relocation of and where necessary to place underground the existing power cables for purposes similar to those for which they are now used." If said Board " shall determine that the removal of the elevated railroad structure * * * will render it necessary * * * to provide for the relocation of and where necessary to place underground existing power cables," then the duty is imposed upon the Board, not to relocate and place underground the existing power cables, but only to approve plans therefor; and such plans, when approved by the Board and by the Transit Commission, then become authority for the construction and maintenance of the new structures and supports shown thereon.

Only by ruthless excision of the words " to provide for the relocation of and where necessary to place underground the existing power cables " from the context in which the words are twice used can this section be construed as imposing upon the city the duty or even the authority to do the work itself. The purpose of the section is clear. It is solely to provide for approval by the Board of Estimate and the Transit Commission of plans for changes in existing railway structures as a condition precedent to " the construction and maintenance of the new structures and supports shown thereon." Construction as well as maintenance of railroad property remains both the duty and the right of the railroad company. Nothing contained in section 4 of the statute removes the limitation upon the right or duty, conferred by section 2 upon the President of the borough of Manhattan to take possession of and to remove railroad structures from the streets *excepting* " property, rights, easements and franchises of the Second and Third Avenue Elevated Railroad System as now constructed or modified, pursuant to this act."

Any doubt which might possibly exist as to this construction of the statute is removed by the final clause of section 4. There the Legislature has recognized that the cost of changes in structures not condemned by the removal of structures condemned should be included in estimating damages caused by the condemnation, yet that the approved plans for the construction of new structures may include elements which are not in fact " changes, alterations or improvements * * * made necessary by the removal of the * * * structures condemned." For that reason it has provided that the approval of such plans shall not " be binding upon the court in * * * estimating the damages." Under the construction urged by the respondents, that provision would have little if any practical effect.

For these reasons the judgment of the Appellate Division should be reversed, without costs, and judgment directed in favor of the plaintiff declaring that defendants are required " to cause the said power lines to be relocated and are to bear the cost and expense thereof in the first instance, the ultimate disposition of such cost and expense to be determined in the condemnation proceeding."

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment accordingly.